

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| FJN:ADW<br>F. #2015R02080/OCDETF #NY-NYE-801 | *271 Cadman Plaza East*<br>*Brooklyn, New York 11201* |

June 30, 2023

<u>By ECF</u>

The Honorable Carol B. Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Carlos Silva Arellano</u>
                <u>Criminal Docket No. 16-241 (S-2) (CBA)</u>

Dear Judge Amon:

      The government respectfully submits this letter in advance of sentencing in the above-referenced case, scheduled for July 12, 2023, and in response to the defendant's sentencing memorandum dated June 26, 2023 ("Def. Mem."). For the reasons set forth below, the government submits that a sentence within the Guidelines range of 108 to 135 months' imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing in this case.

I.     <u>Facts</u>

      The defendant's offense of conviction is based on his participation in the activities of the H-2 Drug Trafficking Organization (the "H-2 DTO"). <u>See</u> Presentence Investigation Report, dated June 1, 2023 ("PSR") ¶¶ 2-4. The H-2 DTO is based in Nayarit and Sinaloa, Mexico and was formerly led by Juan Francisco Patron Sanchez. <u>See id.</u> ¶ 2. The H-2 DTO controls a sprawling network of distribution cells in the United States, with members located in Los Angeles, Las Vegas, Ohio, Minnesota, North Carolina and New York. <u>Id.</u> ¶ 3. Based on the government's investigation to date, the H-2 DTO appears to be responsible for importing into the United States and distributing approximately 500 kilograms of heroin, 100 kilograms of cocaine, 200 kilograms of methamphetamines and 3,000 kilograms of marijuana between 2013 and 2016. <u>Id.</u> These drug distribution activities yielded millions of dollars in proceeds for the cartel.

      The defendant's role within the H-2 DTO was to establish a heroin distribution cell in the Minneapolis, Minnesota area, as well as coordinate the distribution of heroin in a number of

other locations in the Midwest.  See PSR ¶ 4.  Specifically, the defendant regularly distributed kilograms of heroin to co-conspirators in the Minneapolis area.  Id. ¶¶ 6-8.  The heroin originated in Nayarit, was sent to Tijuana, was smuggled into California, and was later distributed to the defendant and other members of the H-2 DTO located in the United States.  Id. ¶ 8.  While the defendant eventually left Minneapolis and moved back to Mexico, he later continued to coordinate the distribution of heroin in United States by passing information between couriers and recipients.  Id. ¶ 9.

In addition, the defendant sometimes collected drug proceeds on behalf of the H-2 DTO or instructed others to do so.  Id. ¶ 11.  For example, the defendant instructed one co-conspirator to pick up more than $200,000 in drug proceeds in Utah, Nevada, and Colorado.  Id.  After the co-conspirator collected the money, and at the defendant's direction, the co-conspirator took the money to California and handed it to another co-conspirator so that it could be smuggled into Mexico.  Id.

The defendant was arrested in Mexico on November 23, 2018.  See id. ¶ 39.  The defendant was extradited to the United States on November 23, 2022.  Id.

On March 20, 2023, pursuant to a plea agreement, the defendant pleaded guilty to Count Three of the second superseding indictment, which charged the defendant with conspiring to import heroin, cocaine, methamphetamine, and marijuana into the United States, including, among other things, at least one kilogram of heroin, in violation of 21 U.S.C. §§ 963 and 960(b)(1)(A).  See PSR ¶ 1.  Counts Two, Four, and Five remain open against the defendant.  Id.

II.     Guidelines Calculation

The government agrees with the Probation Department's calculation of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") as set forth in the PSR.  PSR ¶¶ 17 – 26.  With an offense level of 31 and a Criminal History Category of I, the Guidelines recommend 108 to 135 months' imprisonment.

III.    Argument

The government respectfully submits that the defendant should be sentenced to a term of imprisonment within the Guidelines range of 108 to 135 months.  As described in more detail below, a Guidelines sentence would be sufficient, but no greater than necessary, to satisfy the purposes of 18 U.S.C. § 3553(a)(2).

A. The Applicable Law

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so

doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

>    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>    (2) the need for the sentence imposed—
>
>    (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>    (B)   to afford adequate deterrence to criminal conduct; [and]
>
>    (C)   to protect the public from further crimes of the defendant; and
>
>    (D)   to provide the defendant with needed educational or vocational training, medical card, or other correctional treatment in the most effective manner.

Section 3553 also instructs the Court to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3582(a)(6). As the Second Circuit has explained, "because § 3553(a)(6) is only one of the several factors that a district court must balance, 'a district court's identification of disparity does not necessarily require it to adjust a sentence downward from the advisory guidelines range in order for that sentence to be reasonable . . . much less compel any particular reduction.'" United States v. Goberdhan, 499 F. App'x 63, 66–67 (2d Cir. 2012) (quoting United States v. Florez, 447 F.3d 145, 157–58 (2d Cir. 2006)). The weight given to this factor, like any factor under the statute, is "firmly committed to the discretion" of the sentencing court and beyond appellate review, so long as the ultimate sentence is reasonable in light of all relevant circumstances. Id. (holding also that "the mandate to take into account nationwide disparities under § 3553(a)(6), as distinct from the need to give due weight to the Guidelines under § 3553(a)(4), is modest.").

It is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

3

B. Nature, Circumstances, and Seriousness of the Offense

The government respectfully submits that the Court should impose a Guidelines sentence of between 108 to 135 months' imprisonment because such a sentence is necessary to "reflect the seriousness of the offense" and to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). A Guidelines sentence will also provide appropriate punishment based on the "nature and circumstances of the offense." See id. § 3553(a)(1).

The nature and circumstances of the defendant's offense were very serious. See 18 U.S.C. § 3553(a)(1). The defendant knowingly worked on behalf of a notorious drug cartel and facilitated its importation and distribution of heroin into the United States. Indeed, during his participation in the conspiracy, the defendant was responsible for distributing dozens of kilograms of heroin within the United States. And while the amount of heroin distributed by the defendant is modest compared to the amount distributed by the H-2 DTO as a whole, that is only because the latter is enormous. During the period of the conspiracy, the H-2 DTO smuggled in thousands of kilograms of heroin and other controlled substances, forcing this country to suffer the street crime, violence and addiction that are fueled by the drug trade. The defendant's willing participation in the drug trade, especially as to an opioid as dangerous as heroin, calls for serious punishment. A sentence within the Guidelines range would meet that need.

C. History and Characteristics of the Defendant

The history and characteristics of the defendant also call for serious punishment in this case. See 18 U.S.C. § 3553(a)(1). In addition to the defendant's willing participation in drug trafficking, he also earned money from the H-2 DTO by facilitating its money laundering activities. While the defendant's family circumstances may call for some lenience, Def. Mem. at 8-9, those circumstances are not so unusual or mitigating so as to call for a substantial downward variance. A Guidelines sentence would adequately reflect the defendant's history and characteristics.

D. Respect for the Law, Just Punishment, and the Need for Deterrence

With respect to the other Section 3553 factors, a Guidelines sentence of between 108 to 135 months' imprisonment will also promote respect for the law, provide just punishment and provide adequate deterrence to others contemplating similar acts. See 18 U.S.C. § 3553(a)(2). The defendant's narcotics offense was serious and deserves serious punishment. In addition, a significant carceral sentence will make clear that the country's drug laws will be enforced vigorously, and that importing dangerous drugs may result in serious penalties. Especially where a controlled substance offense was committed directly on behalf of a drug cartel – one of the central players in the drug trade – a significant Guidelines sentence is needed to deter others contemplating similar acts.

E. The Court Should Not Grant a Downward Variance from the Guidelines

The defendant seeks a downward variance from the Guidelines range and a sentence of time served based on the 57 months of detention that he has served since he was first

arrested in Mexico. See Def. Mem. at 8-11. In support of his request for time served, the defendant points to (1) his family circumstances; (2) the sentences imposed on co-defendants; and (3) the conditions of confinement in both Mexico and the MDC. See id.

The defendant's request for time served – representing a downward variance of about 47% below the bottom of the Guidelines range of 108 to 135 months' imprisonment – is drastic and unwarranted. First, while the defendant's family circumstances are sympathetic, they are not so unusual or compelling so as to justify a significant downward variance. Separation between the defendant and his young children is an unfortunate consequence of incarceration, but it is a consequence of the defendant's own making. Moreover, it appears that the defendant's wife is able to support their children without the defendant's help. See PSR ¶ 38.

Second, the defendant's argument concerning avoidance of unwarranted sentencing disparities is baseless. The defendant cites the examples of co-defendants Jose Dagoberto Cortez Perez (sentenced to 120 months' imprisonment based on his role as a "chemist" for the H-2 DTO) and Deovaldo Gutierrez Alfaro (sentenced to 60 months' imprisonment based on his role as a coordinator of drug shipments for the H-2 DTO). See Def. Mem. at 9-10. However, neither case raises the specter of an unwarranted sentencing disparity because the respective Guidelines ranges for those co-defendants were appropriately anchored by the co-defendants' conduct. Cortez Perez's conduct was more serious, resulting in a higher Guidelines range of 168 to 210 months' imprisonment. Similarly, Gutierrez Alfaro faced a lower range of 70 to 87 months' imprisonment because he was held accountable for just 3.5 kilograms of heroin—a base offense level of 32. But here, the evidence shows the defendant trafficked more than 30 kilograms of heroin, resulting in a base offense level of 36.[1] In other words, the defendant's Guidelines range appropriately reflects his own role in the offense conduct. Under those circumstances, a Guidelines sentence would not raise any specter of an unwarranted sentencing disparity.[2]

Finally, while the defendant's conditions of confinement in Mexico and the United States may call for some lenience, they do not support a drastic downward variance. As for the

---

[1] The Court should also reject the defendant's self-serving claim that he was less culpable than Gutierrez Alfaro. See Def. Mem. at 9 ("According to Mr. Arellano, who is familiar with him, Gutierrez Alfaro was a much bigger player in heroin importation than he."). This bare, unsworn assertion by the defendant in no way diminishes the defendant's culpability for conspiring to distribute very large quantities of heroin in the United States.

[2] It is also worth noting that the primary purpose of Section 3553(a)(6) is "to reduce unwarranted sentence disparities on a *nationwide* level." United States v. Sampson, 898 F.3d 287, 314 (2d Cir. 2018) (quoting United States v. Johnson, 505 F.3d 120, 123 (2d Cir. 2007)) (emphasis in original) (internal quotation marks omitted); see also United States v. Frias, 521 F.3d 229, 236 (2d Cir. 2008) (Section 3553(a)(6) "does not require a district court to consider disparities between co-defendants"); United States v. Holloran, 821 F.3d 321, 341 (2d Cir. 2016) (Section 3553(a)(6) "does not require a district court to conform its sentence to any single other sentence adduced by a defendant").

5

defendant's health concerns, those are best addressed through medical orders and prompt designation to a facility that will hopefully be able to treat the defendant in a timely manner.

IV. <u>Conclusion</u>

      For the foregoing reasons, the government respectfully requests that the Court impose a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing, <u>see</u> 18 U.SC. § 3553(a)(2), which, in this case, is a sentence within the Guidelines range of 108 to 135 months in custody.

                                  Respectfully submitted,

                                  BREON PEACE
                                  United States Attorney

                    By:    /s/ Andrew Wang
                                  Andrew Wang
                                  Assistant U.S. Attorney
                                  718-254-6311

cc:    Clerk of the Court (CBA) (by ECF)
        James Branden, Esq. (by e-mail)
        Jaime Turton, Senior United States Probation Officer (by e-mail)